UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
FOUR PAWS PRODUCTS, LTD.,                :
                                         :
                                         :
              Plaintiff,                 :   Docket No.: 07 CV 6267
                                         :   COMPLAINT
    -against-                            :   AND JURY DEMAND
                                         :   JUDGE STEIN
R SABEE COMPANY, LLC, and                :
DRAPER PRODUCTS INC.,                    :
                                         :
              Defendants.                :
------------------------------------------------------------x



Plaintiff Four Paws Products, Ltd. ("Plaintiff"), by its attorneys, Kane Kessler, P.C., as and for its complaint against defendants R Sabee Company, LLC ("R Sabee") and Draper Products, Inc. ("Draper") (collectively, the "Defendants"), respectfully alleges as follows:

### Jurisdiction and Venue

1. This Court has original subject matter jurisdiction of this action based upon 28 U.S.C.1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

2. Venue is proper in this district pursuant to 1391(a)(1) because Defendants were subject to personal jurisdiction in this district at the time this action was commenced.

### The Parties

3. At all times hereinafter mentioned, Plaintiff was and still is a corporation duly organized and existing under and by virtue of the laws of the State of New York, with its principal place of business located at 50 Wireless Boulevard, Hauppauge, New York.

4. At all times hereinafter mentioned, Plaintiff was and still is engaged in the business of selling and distributing pet-related products.

#265110.1

5. Upon information and belief, at all times hereinafter mentioned, R Sabee was and still is a corporation duly organized and existing under and by virtue of the laws of the State of Wisconsin, with its principal place of business located at 1718 W. Eighth Street, Appleton, Wisconsin 54914.

6. Upon information and belief, at all times hereinafter mentioned, R Sabee was and still is engaged in the business of sourcing and manufacturing pet-related products.

7. Upon information and belief, at all times hereinafter mentioned, R. Sabee regularly transacted business within New York State and contracted to supply goods within New York State and regularly does or solicits business on a systematic basis within the State of New York and derives substantial revenue from goods used or consumed within New York State.

8. Upon information and belief, at all times hereinafter mentioned, Draper was and is a corporation duly organized and existing under and by virtue of the laws of the State of Wisconsin, with its principal place of business located at 1718 W. Eighth Street, Appelton, Wisconsin 54914.

9. Upon information and belief, at all times hereinafter mentioned, Draper was and still is engaged in the business of sourcing and manufacturing pet-related products.

10. Upon information and belief, at all times hereinafter mentioned, Draper regularly transacted business within New York State and contracted to supply goods within New York State and regularly does or solicits business on a systematic basis within the State of New York and derives substantial revenue from goods used or consumed within New York State.

## FIRST CLAIM
### (Breach of Contract)

11. In or around May 2004, Plaintiff and R. Sabee desired to conduct discussions regarding a relationship pursuant to which R. Sabee would source and manufacture certain pet-related products on behalf of Plaintiff.

12. In connection with their continued discussions concerning a proposed business relationship and as a condition thereof, in or around May 2004, Plaintiff and R. Sabee entered into an agreement (the "First Non-Competition Agreement"), a copy of which is annexed hereto as Exhibit "A" and is incorporated by reference herein.

13. Paragraph 7 of the First Non-Competition Agreement provides, in part, that R. Sabee "shall not, directly or indirectly, without the prior written approval of [Plaintiff], whether or not for compensation, for the purpose of engaging in competition with [Plaintiff] or assisting any other person or entity in engaging in competition with [Plaintiff], call on or solicit any person or entity who is or was a customer, manufacturer, vendor, or supplier of or for [Plaintiff], or any such person or entity with which [Plaintiff] is or has been engaged in discussions for the purpose of creating a business relationship."

14. Paragraph 8 of the First Non-Competition Agreement further provides, in part, that "[R Sabee] shall not sell any dog pads similar or identical to [Plaintiff]'s WEE WEE PADS brand dog pads to any third parties who sell directly to consumers."

15. By written amendment, the term of the First Non-Competition Agreement was defined to commence as of May 1, 2004 and "shall continue until two (2) years following the later to occur of (i) the last day that [R Sabee] provides goods or services to [Plaintiff] or (ii) the last day that [R Sabee] and [Plaintiff] discuss verbally or in writing [R Sabee's] providing goods

or services to [Plaintiff]." A copy of the amendment to the First Non-Competition Agreement is annexed hereto as Exhibit "B" and is incorporated by reference herein.[1]

16. Subsequent to entering into the First Non-Competition Agreement, Plaintiff and R Sabee commenced a business relationship whereby R Sabee manufactured and sold pet-related products to Plaintiff, which arrangement continues presently.

17. Upon information and belief, subsequent to entering into the First Non-Competition Agreement and contrary to its express provisions, R Sabee sold, and continued to sell either directly or through Draper, dog pads similar or identical to Plaintiff's WEE WEE PADS brand dog pads to Walmart stores ("Walmart"). Walmart is a third party retailer who sells directly to consumers and at all relevant times, was and still is a customer of Plaintiff.

18. Plaintiff performed each of its obligations under the First Non-Competition Agreement.

19. R Sabee's acts and omissions, as described herein, constitute a material breach of the First Non-Competition Agreement.

20. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but not less than $2,500,000 plus interest.

## SECOND CLAIM
### (Fraud)

21. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 though 20 above, as if more fully set forth herein at length.

22. In or around October 2004, Plaintiff advised R Sabee that R. Sabee's sale of dog pads similar or identical to Plaintiff's WEE WEE PADS brand dog pads to Walmart constituted

---

[1] The First Non-Competition Agreement and the amendment thereto are collectively referred to as "the First Non-Competition Agreement").

#265110.1

4

a breach of the First Non-Competition Agreement and requested, <u>inter alia</u>, that R Sabee cease and desist from continuing such sales.

23.  By letter dated November 29, 2004, a copy of which is annexed hereto as Exhibit "C" and is incorporated by reference herein, R Sabee, by and through its representative Kevin Clancey, Vice President of Operations, represented to Plaintiff as follows:

> [e]xecutive leadership of R. Sabee Company, LLC hold the Four Paws Pet Products, Ltd. in highest regard as a valued customer and do not wish to endanger this relationship in any way. If Four Paws Pet Products feels we are in violation, then the R. Sabee Company, LLC will comply to [sic] request...
>
> Effective November 11, 2004 the puppy pad business transactions between Wall-Mart Stores, Inc., and the R. Sabee Company, LLC have ended.

24.  Upon information and belief, at or around the time that R Sabee made the foregoing representations in its letter dated November 29, 2004, R. Sabee began selling its dog pads to Walmart through Draper.

25.  Upon information and belief, Draper does not have or maintain a separate existence from R. Sabee, and Draper is in actuality one and the same entity as R. Sabee, as evidenced by the following, <u>inter alia</u>:

    (a)  Draper and R. Sabee have identical owners;

    (b)  Draper and R. Sabee have identical employees;

    (c)  Draper and R. Sabee are engaged in the same type of business, to wit, sourcing and manufacturing pet-related products;

    (d)  Draper and R. Sabee have the same offices, located at 1718 W. Eighth Street, Appleton, Wisconsin 54914;

    (e)  Draper and R. Sabee have the same phone number: (920) 882-7350;

(f) Draper and R. Sabee utilize the same equipment;

(g) Draper and R. Sabee have identical officers and directors;

(h) the assets and accounting of Draper and R. Sabee are commingled;

(i) Draper has no capitalization independent from R. Sabee and/or Draper is grossly undercapitalized.

26. Because R. Sabee and Draper have no separate existence and/or are alter-egos of each other, R. Sabee continues to sell its dog pads to Walmart, which are similar or identical to Plaintiff's Wee Wee Pads.

27. The representations contained in R. Sabee's November 29, 2004 letter that "[e]ffective November 11, 2004 the puppy pad business transactions between Wall-Mart Stores, Inc., and the R. Sabee Company, LLC have ended," were material and knowingly false when made and made with intent to defraud Plaintiff.

28. Plaintiff reasonably relied on the aforesaid misrepresentations to its detriment by, inter alia: (a) failing to terminate and continuing to perform its obligations under the First Non-Competition Agreement; (b) entering into a subsequent non-competition agreement with R. Sabee on April 11, 2005, described hereinbelow; (c) forbearing from seeking other manufacturing sources; and (d) failing to pursue appropriate legal remedies against R. Sabee and/or Draper for its tortious actions.

29. Upon information and belief, R. Sabee's sale of its dog pads to Walmart stores through Draper was a mere subterfuge designed to effectuate Plaintiff's continued performance under the First Non-Competition Agreement and subsequent agreement, while enabling R. Sabee to avoid its obligations thereunder.

30. As a result of Plaintiff's reliance on R. Sabee's misrepresentations, as described herein, Plaintiff has been damaged in an amount to be determined at trial, but not less than $2,500,000, plus interest.

31. R. Sabee's conduct, as herein alleged, was malicious and oppressive, was done with the intent to vex and injure Plaintiff, was committed with willful and conscious disregard of Plaintiff's rights and with an awareness of the injurious consequences of such actions to Plaintiff, such that Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial, but not less than $1,000,000.

### THIRD CLAIM
### (Fraud)

32. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 31 as if more fully set forth herein at length.

33. In reliance solely upon R. Sabee's representation that it had stopped making any sales to Walmart stores as of November 11, 2004, on or about April 11, 2005, Plaintiff and R. Sabee entered into another agreement ("the Second Non-Competition Agreement") whereby R. Sabee agreed to provide certain manufacturing services on behalf of Plaintiff. A copy of the Second Non-Competition Agreement is annexed hereto as Exhibit "D" and is incorporated by reference herein.

34. Pursuant to paragraph 9, the Second Non-Competition Agreement "shall remain in effect during the discussions between the parties…and for a period of two (2) years after the later of the cessation of all discussions between the parties with regard to the proposed relationship or end of business relationship…"

35. The business relationship between the parties is ongoing and continues presently.

36. Like the First Non-Competition Agreement, paragraph 7 of the Second Non-Competition Agreement provides, in part, that "[f]or the term of this Agreement...R Sabee...shall not, directly or indirectly, without the prior written approval of [Plaintiff], whether or not for compensation, for the purpose of engaging in competition with [Plaintiff] or assisting any other person or entity in engaging in competition with [Plaintiff], call on or solicit any person or entity who is or was a customer..., vendor, or supplier of or for [Plaintiff], or any such person or entity with which [Plaintiff] is or has been engaged in discussions for the purpose of creating a business relationship."

37. Further similar to the First Non-Competition Agreement, paragraph 8 of the Second Non-Competition Agreement provides, in part, that "[f]or the term of this Agreement...R.Sabee...shall not sell any Puppy Pads similar or identical to [Plaintiff]'s "Wee-Wee/Pet Select Pee Pee" brand Puppy Pads to any third parties who sell directly to the trade or to consumers."

38. Notwithstanding its prior representations, at the time that R. Sabee entered into the Second Non-Competition Agreement, R. Sabee was selling, and continues to sell, its dog pads to Walmart under the name Draper, which dog pads are similar or identical to Plaintiff's Wee-Wee/Pet Select Pee Pee brand Puppy Pads.

39. R Sabee's representation that it had stopped all sales of its dog pads to Walmart as of November 11, 2004 was material and knowingly false when made and made with intent to defraud Plaintiff.

40. By reason of the above, at the time the Second Non-Competition Agreement was entered into, R. Sabee had no intention, and never had any intention from the inception, of honoring its obligations under the Second Non-Competition Agreement.

41. At the time Plaintiff entered into the Second Non-Competition Agreement, Plaintiff was unaware that R. Sabee was continuing to sell its dog pads to Walmart stores under the name Draper and reasonably relied on R. Sabee's representations in entering into the Second-Non Competition Agreement.

42. As a result of Plaintiff's reliance on R. Sabee's misrepresentations, as described herein, Plaintiff has been damaged in an amount to be determined at trial, but not less than $2,500,000, plus interest.

43. R. Sabee's conduct, as herein alleged, was malicious and oppressive, was done with the intent to vex and injure Plaintiff, was done with willful and conscious disregard of Plaintiff's rights and with an awareness of the injurious consequences of such actions to Plaintiff, such that Plaintiff is entitled to an award of punitive damages, in an amount to be determined at trial, of not less than $1,000,000.

## FOURTH CLAIM
### (Breach of Contract)

44. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 as if more fully set forth herein at length.

45. As alleged above, the Second Non-Competition Agreement prohibited R Sabee from calling on or soliciting any person or entity who is or was a customer, vendor, or supplier of or for Plaintiff, or any such person or entity with which Plaintiff is or has been engaged in discussions for the purpose of creating a business relationship.

46. The Second Non-Competition Agreement further prohibited R Sabee from selling any dog pads similar or identical to Plaintiff's Wee-Wee/Pet Select Pee Pee brand Puppy Pads to any third parties who sell directly to the trade or to consumers.

47. Upon information and belief, subsequent to entering into the Second Non-Competition Agreement and contrary to its express provisions, R Sabee sold, and continues to sell, dog pads similar or identical to Plaintiff's Wee Wee/Pet Select Pee Pee brand dog pads to Walmart under the name Draper.

48. Walmart is a third party who sells directly to consumers and at all relevant times, was and still is a customer of Plaintiff.

49. Plaintiff performed each of its obligations under the Second Non-Competition Agreement.

50. Defendants' acts and omissions, as described herein, constitute a material breach of the Second Non-Competition Agreement.

51. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but not less than $2,500,000, plus interest.

### FIFTH CLAIM
### (Tortious Interference with Contract)

52. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 51 of the Complaint as if more fully set forth herein at length.

53. At all relevant times, Plaintiff had a contractual and/or business relationship with Walmart.

54. Upon information and belief, Defendants knew of the contractual and/or business relationship between Plaintiff and Walmart, and of the time, effort and money which Plaintiff had expended in order to procure and retain that contractual and/or business relationship.

55. Upon information and belief, commencing in or around 2004, R Sabee and/or Draper engaged in the following conduct specifically designed to interfere with and disrupt Plaintiff's contractual and/or business relationship with Walmart and to otherwise evade the

obligations under the First and Second Non-Competition Agreements: R Sabee and/or Draper devised a plan, unbeknownst to Plaintiff, to continue its sale of dog pads to Walmart stores by and through Draper, notwithstanding its express obligations to refrain from making such sales under the First and Second Non-Competition Agreements, or its representations that all sales to Walmart had ended as of November 11, 2004.

56. Defendants, by fraudulent and improper means, as described herein, intentionally and maliciously interfered with Plaintiff's contracts and business relationship with Walmart and improperly induced, enticed, procured and caused Walmart to terminate and/or modify its business relationship with Plaintiff.

57. As a proximate result of Defendants' conduct, as described herein, there is a likelihood of irreparable injury to Plaintiff's business and its opportunity to obtain compensation in connection with the commercial exploitation of its dog pad products.

58. Unless enjoined by the Court, defendants' will continue to tortiously interfere with Plaintiff's contracts and business relationship with Walmart, thereby causing immediate and irreparable harm to Plaintiff.

59. Plaintiff has no adequate remedy at law and cannot be compensated solely by monetary damages.

60. Plaintiff is entitled to an injunction restraining Defendants, their officers, agents, employees and anyone acting in concert with them, from engaging in any further acts of tortious interference with Plaintiff's contractual and business relationships for the term of the Second Non-Competition Agreement.

61. As a proximate result of Defendants' conduct, as described herein, Plaintiff is entitled to damages in an amount to be determined at trial, but not less than $2,500,000, plus interests.

62. Defendants' conduct, as alleged herein, was malicious and oppressive, was done with the intent to vex and injure Plaintiff, was done with willful and conscious disregard of Plaintiff's rights and with an awareness of the injurious consequences of such actions to Plaintiff, wherefore Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial, but not less than $1,000,000.

**WHEREFORE**, plaintiff Four Paws Products, Ltd. demands judgment against defendants R Sabee Company, LLC and Draper Productions, Inc. as follows:

(a) on the First Claim, compensatory damages in the amount of at least $2,500,000, plus interest;

(b) on the Second Claim, compensatory damages in the amount of at least $2,500,000 million, plus interest and punitive damages in the amount of at least $1,000,000;

(c) on the Third Claim, compensatory damages in the amount of at least $2,500,000, plus interest and punitive damages in the amount of at least $1,000,000;

(d) on the Fourth Claim, compensatory damages in the amount of at least $2,500,000, plus interest;

(e) on the Fifth Claim, an injunction enjoining Defendants from the sale to of dog pads which are similar or identical to Plaintiff's Wee-Wee/Pet Select Pee Pee brand Puppy Pads to any third parties who sell directly to the trade or to consumers and/or an person or entity which conducts any business with Plaintiff, compensatory damages in the amount of at least $2,500,000, plus interest and punitive damages in the amount of at least $1,000,000; and

(f)    on all causes of action, the costs and disbursements of this action, together with such other, further and different relief as to the Court seems just and proper.

Dated: New York, New York
June 29, 2007

KANE KESSLER, P.C.

By: _____
Dana M. Susman (DS-5436)
S. Reid Kahn (SRK-1458)
Attorneys for Plaintiff
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222

## JURY DEMAND

Plaintiff demands trial by jury on all issues.

KANE KESSLER, P.C.

By: _____
Dana M. Susman (DS-5436)
S. Reid Kahn (SRK-1458)
Attorneys for Plaintiff
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222
